OPINION OF THE COURT
William P. Warren, J.
This is an adoption proceeding commenced in this court by the filing of a verified petition on or about January 4, 1990. Prior to the filing of this petition, a petition for certification as a qualified adoptive parent was filed on December 11, 1989. The adoptive parents were certified as qualified adoptive parents for the purpose of adoption. On December 27, 1989 the adoptive child was placed in the custody of the adoptive parents.
*897 Thereafter, the attorney for the adoptive parents sought court approval for certain expenses of the adoptive parents. As set forth in the affidavit of financial disclosure filed by the petitioners, those expenses were ”10 weeks lost wages of $300. per week — $3,000.00” and "John A. Exnicios, Esq. (attorney for natural mother) — $1,850.00.” The court directed that there be submitted affidavits explaining the necessity of these expenses and such affidavits have been received.
Payment of lost wages by the adoptive parents to the natural mother and the court approving of these payments raised two issues before the court. First, does the statute require court approval of these expenses, and, if it does, are lost wages contemplated by the language set forth in Domestic Relations Law § 115 (8)?
Domestic Relations Law § 115 (8) requires the adoptive parents to present an affidavit to the court: "[Describing all fees, compensation and other remunerations paid by such parent or parents on account of or incidental to the birth or care of the adoptive child, the pregnancy or care of the adoptive child’s mother or the placement or adoption of the child and on account of or incidental to assistance in arrangements for such placement or adoption.”
22 NYCRR 205.53 (b) (8) (vi) (Uniform Rules for Trial Cts) requires the filing of an affidavit of financial disclosure from the adoptive parent setting forth, amongst other information, "the name and address of any other person, agency, association, corporation, institution, society or organization who received or will receive any fees, compensation or other remuneration from the affiant, directly or indirectly, on account of or incidental to the birth or care of the adoptive child, the pregnancy or care of the adoptive child’s mother or the placement or adoption of the child and on account of or incidental to assistance in arrangements for such placement or proposed adoption; the amount of each such fee, compensation or other remuneration; and the reason for or services rendered, if any, in connection with each such fee, compensation or other remuneration”.
While the statutory and rule language per se do not require that such fees be approved by the court, there is at least one reported case supporting this interpretation. In Matter of Anonymous (133 Misc 2d 741-742), the Westchester County Surrogate held: "The reimbursable expenses of a natural mother are limited to those 'on account of or incidental to the *898 birth or care of the adopted child, the pregnancy or care of the adoptive child’s mother or the placement or adoption of the child and on account of or incidental to assistance in arrangements for such placement or adoption.’ (Domestic Relations Law § 115 [7].)”
In that case, the Surrogate went on to disallow reimbursement for lost wages holding that such are not viewed as incidental to the pregnancy and birth of the child. Therefore, they did not fall within the parameters of reimbursable expenses envisioned by Domestic Relations Law § 115 (former [7]). (It should be noted that Domestic Relations Law § 115 [7] was renumbered and is now denoted as Domestic Relations Law §115 [8].)
This court agrees with the Westchester Surrogate who implicitly held that court approval of adoption expenses were contemplated by the Legislature in enacting section 115 (8) of the Domestic Relations Law. Query, for what other purpose would the Legislature and the Chief Administrative Judge of the Courts of the State of New York have required the submission of such a detailed listing of expenditures in connection with adoption except to grant to the courts the authority to address the payment thereof?
Nevertheless, the language of Domestic Relations Law § 115 (8) leaves much to be desired. A clear statement indicating that all the listed expenses must be preapproved by the court would make explicit to all that petitioners cannot be forced to pay exorbitant fees since court approval would be required. This position was supported by a New York County Grand Jury report of January 20, 1989.
As a result of the death of a child and the neglect of another, a Grand Jury was convened in April of 1988 in New York County to investigate the current state of the laws concerning private-placement adoptions. One of the recommendations was that there be uniform State-wide rules for both Family and Surrogate’s Court requiring Judges to approve expenditures agreed to by the adoptive parents prior to the placement of the child. By requiring such prepayment approval, the adoptive couple is protected against potential price gouging. (See, Carrieri and Meyer, Private Adoptions: Need for Comprehensive Legislative Review, NYLJ, Nov. 15, 1989, at 1, col 1.) This court adds its voice to that of the Grand Jury and urges legislative action to clearly establish what the policy of the State of New York is regarding the question of approval of expenditures in connection with adoptions.
*899 Having determined that the expenses must be approved by the court, what guidelines exist to determine whether "lost wages” were contemplated by the Legislature and the Chief Administrator in adopting Domestic Relations Law § 115 (8) and 22 NYCRR 205.53? The statutory language merely provides: "[C]ompensation and other remunerations paid by such parent or parents on account of or incidental to the birth or care of the adopted child, the pregnancy or care of the adopted child’s mother or the placement or adoption of the child and on account of or incidental to assistance in arrangements for such placement or adoption.” (Domestic Relations Law § 115 [8].)
The affidavit of the natural mother claimed that she had been employed in a job which required her to be on her feet for eight-hour shifts. The physical stress was incompatible with this work and her physician advised her to take a 10-week maternity leave.
Given the broad reach of the language used in both the Domestic Relations Law and the Uniform Rules, it is impossible for this court to find that wages lost as a result of the physical condition caused by pregnancy is not a properly reimbursable expense. Until such time as legislation or guidelines are promulgated with more specificity than those which presently exist, this court will hold that lost wages, reasonably related to a condition of pregnancy, are within the contemplation of existing statutes and rules. Consequently, the application to approve payment of $3,000 in lost wages is granted. Further, the application to approve the attorney’s fees of $1,850 to the attorney for the natural mother in connection with the surrendering of the child is similarly allowed.
Over the past several years, the Legislature has made a number of changes in the statutes involving adoption. These changes include a requirement for certification of adoptive parents (L 1989, ch 700), a provision for temporary guardianship by adoptive parents (L 1988, ch 557), a requirement for the filing of agency fee information in connection with the Interstate Compact (L 1989, ch 314), and requirements involving surrenders when children are in foster care (L 1989, ch 722). Notwithstanding all of these recent enactments, the subject matter before the court today is yet another example of where further legislation or rulemaking is necessary.
Periodically, the State Legislature appoints commissions to recodify statutes which, over time, have had so many changes *900 that a comprehensive review is needed. This court believes that the adoption laws of the State of New York should be revised by the Legislature after review by a commission with an eye towards a complete recodification. Much of what occurs every day in the field of adoptions is as a result of local Judge rules. No clear set of statutes or rules exist for questions such as, must surrendering natural parents be represented by counsel; must the surrendering natural mother appear before a Judge to execute consents; and what expenses can adoptive parents offer to pay to surrendering natural parents in connection with an adoption? Questions such as these and many others should be addressed by the Legislature. After several years of extensive revision of the adoption laws, it appears to this court that a recodification of adoption statutes after review by a commission is in order. As the report of the Grand Jury of New York County in January of 1989 stated, " 'An expert informed us that it has been about 40 years since the State of New York took a long, hard look at the adoption laws and issues related to the civil rights of the parties involved. Needless to say, much has happened in the intervening period of time, and we believe it is time that an exhaustive examination of adoption is undertaken.’ ” (See, Carrieri and Meyer, Private Adoptions: Need for Comprehensive Legislative Review, NYLJ, Nov. 15, 1989, at 6, col 6.) This court concurs in that view and urges the Legislature of the State of New York to proceed accordingly.